1

2

3

4

5

6                     IN THE UNITED STATES DISTRICT COURT

7               FOR THE EASTERN DISTRICT OF CALIFORNIA

8   CAROLE TREW, on behalf of
    herself and all others
9   similarly situated, and on
    behalf of the general public as
10  a private attorney general;          CIV-S-05-1379 DFL PAN
    JUDITH MARX, MATTHEW MARX, and
11  LOREN FUNK, on behalf of             MEMORANDUM OF OPINION
    themselves and all others                  AND ORDER
12  similarly situated,

13        Plaintiffs,

14        v.

15
    VOLVO CARS OF NORTH AMERICA,
16  LLC, and DOES 1-100, inclusive,

17        Defendants.

18

19

20        Defendant Volvo Cars of North America, LLC ("Volvo") moves

21  to strike plaintiffs' claims for equitable monetary relief and

22  damages under California's Business & Professions Code §§ 17200,

23  et seq. (the "UCL").  In a separate motion, Volvo moves to

24  dismiss plaintiff Trew ("Trew") from the first amended complaint

25  ("FAC").

26

                                  1

I.

Plaintiffs currently own or lease vehicles manufactured by Volvo.  (FAC ¶ 7.)  Beginning in 1999, Volvo manufactured vehicles with an electronic throttle module ("ETM").  (Id. ¶ 8.) Plaintiffs allege that Volvo installed defective ETMs in their vehicles, and that a malfunctioning ETM can cause a vehicle to shake, surge, or lose power.  (Id. ¶¶ 8, 10.)  According to plaintiffs, when customers complained, Volvo denied that the ETMs were defective.  (Id. ¶ 11.)  Plaintiffs allege that Volvo continues to conceal the problem with its ETMs.  (Id. ¶¶ 18-19.)

In July 2001, Volvo issued a service bulletin to dealers describing the problems with the ETM and providing that dealers could submit claims for cleaning ETMs under warranty if a customer were to complain.[1]  (Id. ¶ 30-31.)  Before issuing the service bulletin, Volvo allegedly considered that it was the customer's responsibility to clean the ETM, and typically did not pay for ETM cleanings under a new car warranty.[2]  (Id. ¶ 35.) Plaintiffs allege that by cleaning, instead of replacing, the ETM, Volvo ensured that the defective ETMs would fail outside of

---

[1] Plaintiffs also allege that in Volvo vehicles with turbo engines, another part, the PCV-intake-nipple, also required cleaning.  (FAC ¶ 13.)

[2] The court notes that plaintiffs use the term "cleaning" whereas Volvo generally describes the procedure as "repairing" the ETM.  For consistency, the court will use "cleaning" on the assumption that "cleaning" and "repairing" are the same in this context.

the warranty period saving Volvo the cost of replacement.[3]  (Id.
¶¶ 15, 17.)  Because only Volvo dealers could replace ETMs,
plaintiffs claim that Volvo profited from the sale of replacement
ETMs.[4]  (Id. ¶ 23.)

On May 12, 2004, Trew brought this class action against
Volvo in Sacramento County Superior Court.  (Compl. ¶ 1.)  On
June 21, 2005, plaintiffs filed the FAC.  The FAC included two
additional named plaintiffs, Funk and Marx.  Unlike Trew, both
Funk and Marx paid to clean and replace their ETMs.  (FAC ¶ 2-3.)
On July 8, 2005, Volvo filed a notice of removal under 28 U.S.C.
§ 1441.

Plaintiffs allege that Volvo violated the California Secret
Warranty Law ("Secret Warranty Law"), California Civil Code
section 1795.90 *et seq.*, by: (1) failing to notify all affected
vehicle owners that they could have their ETMs cleaned or
replaced for no charge (FAC ¶ 41); (2) failing to reimburse
vehicle owners who paid to have their ETMs cleaned (Id. ¶ 66);
(3) replacing faulty ETMs for some customers with expired
warranties but failing to notify all other customers of that
benefit (Id. ¶ 37); (4) failing to provide free cleaning or
replacement of faulty ETMs for customers who requested those
services (Id. ¶ 44); (5) cleaning ETMs for customers with expired

---

[3] Plaintiffs also allege that to pacify vocal customers
Volvo will sometimes provide free ETM cleanings after a
customer's warranty expires.  (Id. ¶ 39.)

[4] However, plaintiffs allege Volvo also offered free ETM
replacements to customers who complained "loudly enough." (Id. ¶
37.)

warranties (Id. ¶ 39); (6) failing to comply with the dealer notification provisions (Id. ¶ 42); and (7) failing to comply with the New Motor Vehicle Board notification procedures (Id. ¶ 43).

Based on the alleged violations of the Secret Warranty Law, plaintiffs bring: (1) a claim under the UCL; and (2) an unjust enrichment claim to recover "secret" profits obtained by Volvo. (Id. ¶¶ 65, 72.)  In addition, plaintiffs raise the following claims for Volvo's alleged concealment of the ETM defects: (1) violation of the UCL; (2) unjust enrichment; (3) fraudulent concealment; and (4) violation of the Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*  (FAC ¶¶ 71, 79, 92-94.)

II.

A. Motion to Strike

Under Federal Rule of Civil Procedure 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Also, "[a] motion to strike may be used to strike any part of the prayer for relief when the damages sought are not recoverable as a matter of law."  Bureerong v. Uvawas, 922 F.Supp. 1450, 1479 (C.D. Cal. 1996) (citing Tapley v. Lockwood Green Eng'rs, Inc., 502 F.2d 559, 560 (8th Cir. 1974)).  Rule 12(f) aims to prevent "the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885

(9th Cir. 1983).  However, courts generally disfavor motions to strike because litigants often use them to delay proceedings and because pleadings have limited importance in federal practice.  <u>Colaprico v. Sun Microsystems, Inc.</u>, 758 F.Supp. 1335, 1339 (N.D. Cal. 1991).

Volvo moves to strike plaintiffs' claims for: (1) disgorgement of profits; and (2) the cost of cleaning or replacing the ETMs.  (Mot. to Strike at 2, 5.)

<u>1. Disgorgement of Profits</u>

Volvo argues that plaintiffs' claim for disgorgement of profits under the UCL should be stricken because plaintiffs' costs of cleaning and replacement cannot be traced to funds acquired by Volvo.  (<u>Id.</u> at 2-4.)

Under the UCL, plaintiffs are limited to injunctive relief and restitution.  <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal.4th 1134, 1144 (2003).  "An order for restitution is one compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person."  <u>Id.</u> at 1149 (internal quotations omitted).  A plaintiff may not recover non-restitutionary disgorgement of profits under the UCL.  <u>Id.</u> at 1152; <u>Feitelberg v. Credit Suisse First Boston, LLC</u>, 134 Cal.App.4th 997, 1015-1020 (2005) (holding that rule applies to class action plaintiffs); <u>Madrid v. Perot Sys. Corp.</u>, 130 Cal.App.4th 440, 460 (2005) (same).

1    Plaintiffs in this case seek disgorgement of the profits
2    Volvo earned from alleged violations of the Secret Warranty Law.
3    (FAC ¶ 69.)   Volvo argues that plaintiffs fail to allege that any
4    member of the class has paid money to Volvo to clean or replace
5    an ETM.  (Mot. to Strike at 3.)   Volvo claims that plaintiffs
6    paid dealerships or independent mechanics to service their ETMs
7    and that these monies did not go to Volvo.  (Id.)  Because
8    plaintiffs have not paid Volvo directly, Volvo argues that it has
9    not retained any property in which plaintiffs have an interest.
10   (Id.)   Therefore, Volvo concludes that plaintiffs seek
11   non-restitutionary disgorgement.  (Id.)

12   Plaintiffs respond that their claim is for restitution
13   because Volvo profited from those plaintiffs who cleaned or
14   replaced their ETMs because Volvo was the maker of the ETM and,
15   therefore, profited from their sale.  (Opp'n to Mot. to Strike at
16   15-22.)   Plaintiffs argue that their situation is analogous to
17   the plaintiffs in Corbett v Superior Court, 101 Cal.App.4th 649
18   (2002).[5]  (Id. at 21.)

19   In Corbett, the plaintiffs alleged that Bank of America and
20   Hayward Dodge violated the UCL by fraudulently increasing the
21   interest rate on car loans.  101 Cal.App.4th at 656.  The
22   plaintiffs claimed that Bank of America approved car loans for
23   the plaintiffs at 12.50% interest, but Hayward Dodge prepared the
24

25        [5] In Corbett, the court did not address whether the
     plaintiffs could recover under a theory of restitutionary
26   disgorgement.  However, in Madrid, the court cited Corbett as an
     example of restitutionary disgorgement.  130 Cal.App.4th at 461-
     62.

loan documents with a 17.50% interest rate.  Id.  Although the
plaintiffs paid Bank of America directly for the loan, the
defendants split the money from the elevated interest rate.  Id.
Plaintiffs argue that, similar to the plaintiffs in Corbett who
recovered from Hayward Dodge, Volvo has received profits from
class members who had their ETMs cleaned or replaced at Volvo
dealerships.  (Opp'n to Mot. to Strike at 22.)

Plaintiffs analogy between this case and Corbett is
persuasive, at least on the facts as plaintiffs allege them.  In
Corbett, the court allowed the plaintiffs to recover against
Hayward Dodge because it received some of the profits from the
allegedly fraudulent activity.  Similarly, plaintiffs allege that
Volvo profited from its sale of replacement ETMs to the mechanics
and dealers that ultimately replaced parts for plaintiffs.  (FAC
¶ 73.)  Taking plaintiffs' allegations as true, if Volvo profited
from class members who replace defective ETMs by purchasing new
ones, then plaintiffs could recover that money from Volvo under a
theory of restitution.  Therefore, the court DENIES Volvo's
motion to strike plaintiffs' claim for disgorgement of profits
under the UCL.

2. Reimbursement for Cleaning or Replacement of ETMs

Volvo also moves to strike plaintiffs' claim for
reimbursement of class members who paid for cleaning or
replacement of their ETMs.  (Mot. to Strike at 5.)

As stated above, under the UCL, plaintiffs are limited to
injunctive relief and restitution.  Korea Supply, 29 Cal.4th at

1144.  Because plaintiffs never paid Volvo for cleaning or

replacement of their ETMs, Volvo argues that any "reimbursement"

that plaintiffs claim would be the same as a damage remedy which

is not provided under the UCL.  (Mot. to Strike at 5.)

Plaintiffs respond that the class members who cleaned or

replaced their ETMs have an ownership interest in the money they

now seek by operation of the Secret Warranty Law.[6]  (Opp'n to

Motion to Strike at 11-12.)  Sections 1795.92 (d) and (e) of the

Secret Warranty Law state:

> (d) A manufacturer who establishes an adjustment
> program shall implement procedures to assure
> reimbursement of each consumer eligible under an
> adjustment program who incurs expenses for repair of a
> condition subject to the program prior to acquiring
> knowledge of the program . . . .

> (e) Any consumer who, prior to acquiring knowledge of
> an adjustment program, incurs expenses for repair of a
> condition subject to the adjustment program may file a
> claim for reimbursement under subdivision (d) . . . .

Plaintiffs argue that under those sections, a car

manufacturer who expands or extends a warranty must reimburse

consumers who incurred expenses in repairing a part covered by

the "secret warranty."  (Opp'n to Mot. to Strike at 12.)

Therefore, plaintiffs argue, because Volvo expanded its warranty

to cover the cleaning of ETMs in certain cases, and did not

reimburse plaintiffs who paid to have their ETMs cleaned or

replaced without knowledge of the warranty, Volvo has possession

---

[6] The court notes that the cases use the term "vested
interest" whereas plaintiffs refer to an "ownership interest."
The court uses these terms interchangeably.

of money in which plaintiffs' have an ownership interest.  (Id.)

According to plaintiffs, because they have such an interest, the

payment of these monies may be seen as restitutionary as opposed

to the typical damages remedy that is not available under the

UCL.  (Id. at 11-12.)

    To support their argument, plaintiffs cite Rosales v.

Citibank, Fed. Sav. Bank, 133 F.Supp.2d 1177 (N.D. Cal. 2001).

In Rosales, the plaintiff brought a claim under the UCL and the

Electronic Funds Transfer Act, 15 U.S.C. § 1693 ("EFTA"), against

Citibank for failing to reimburse him for $2,149.23 in

unauthorized withdrawals from his bank account.  133 F.Supp.2d at

1179.  Citibank moved to strike the plaintiff's claim for

restitution of the money that was withdrawn from his account

without his authorization.  Id. at 1180.  Although Citibank never

received the funds taken from the plaintiff's account, the court

ordered Citibank to restore the amount improperly withdrawn.  Id.

at 1182.  The court reasoned that if the EFTA required Citibank

to credit the plaintiff for the unauthorized withdrawals, and it

had not, then Citibank possessed money that belonged to the

plaintiff "in violation of the law . . . by means of 'unfair

competition.'"  Id. at 1181.

    Plaintiffs argue that this case is analogous to Rosales.

(Opp'n to Mot. to Strike at 12.)  They claim that if Volvo has

expanded its warranty, § 1795.92 requires it to reimburse class

members who have already paid for cleaning or replacement of

their ETMs.  (Id.)  By failing to reimburse plaintiffs, Volvo,

like Citibank, possesses funds in which plaintiffs have an interest.  (Id.)  Therefore, plaintiffs argue that their claim for reimbursement is restitution.

However, this case is distinguishable from Rosales for two reasons.  First, in Rosales, the bank returned money taken from the plaintiff's account.  By contrast, here, no one took money from plaintiffs.  Instead, plaintiffs allege that they have been injured because they had to pay to clean or replace the ETM in their vehicle.  Plaintiffs' claim for reimbursement of the cost of cleaning or replacing their defective ETMs is a classic claim for damages, not restitution.  See Pfingsten v. Westenhaver, 39 Cal.2d 12, 23 (1952) (discussing the reasonable cost of repairs as a measure of damages).

Second, the EFTA provides a definite remedy.  Under the EFTA, a financial institution must recredit a customer's account for acts defined as error by the statute.  See 15 U.S.C. § 1693f. If the financial institution fails to comply with the statutory requirements for error resolution, then it is liable to the consumer for damages.  See 15 U.S.C. § 1693m.  By contrast, the Secret Warranty Law only states that consumers may file a claim for reimbursement.  The statute contains no provisions for civil liability that allows a consumer to seek damages by way of a lawsuit if the manufacturer fails to make the reimbursement.  A customer might be able to complain to a regulatory agency, but no case has held that the customer has a private right of action to recover the funds and plaintiffs do not make such a claim.

Without a clear indication that the Secret Warranty Law requires reimbursement, plaintiffs have not shown that they have a vested interest in the cost of cleaning or replacing their ETM. Therefore, the court GRANTS Volvo's motion to strike plaintiffs' claim for reimbursement of class members who paid for cleaning or replacement of their ETM.

C. Motion to Dismiss or, in the Alternative, Motion for Summary Judgment

    1. Conversion to Summary Judgment

Volvo moves to dismiss Trew from the FAC, or, in the alternative, for summary judgment on her claim.  In support of the motion for summary judgment, Volvo has attached a number of declarations.  Plaintiffs respond that the court should not convert Volvo's motion to dismiss to a motion for summary judgment because they have not had sufficient time for discovery. (Opp'n to Mot. to Dismiss at 10.)  Until the facts and claims in this case are better developed, the court declines to rule on a motion for summary judgment.  Therefore, the court will not consider the exhibits attached to the parties' papers.

    2. Motion to Dismiss

Volvo moves to dismiss Trew's claims for: (1) violation of the UCL; (2) unjust enrichment; (3) fraud; and (4) violation of the CLRA.  (Mot. to Dismiss at 6, 12-13.)  Volvo argues that Trew cannot bring these claims because she has not suffered an injury. (Id.)

1

    a. Standing

2     Volvo argues that Trew's claim under the UCL should be

3  dismissed because recent amendments to that statute have changed

4  the requirements for standing.  (Mot. to Dismiss at 5-12.)  Trew

5  responds that she has standing, and, in the alternative, that the

6  amendment to the UCL does not apply retroactively.  (Opp'n to

7  Mot. to Dismiss at 6-8.)  However, because this case is in

8  federal court, Trew must meet the standing requirements of

9  Article III.  See Lujan v. Defenders of Wildlife, 504 U.S. 555,

10  560-61, 112 S.Ct. 2130 (1992).  Article III standing is limited

11  to those plaintiffs who can allege an injury in fact that is: (1)

12  actual and imminent; and (2) concrete and particularized.  Id.

13     The court must consider whether Trew has standing for each

14  claim raised by her.  Trew brings claims for Volvo's alleged

15  concealment of the defect in the ETM under: (1) the UCL; (2) the

16  CLRA; (3) fraudulent concealment-nondisclosure; and (4) unjust

17  enrichment.  She also brings a claim for violations of the Secret

18  Warranty Law under the UCL and unjust enrichment.

19             i. UCL, Fraud, CLRA, and Unjust Enrichment Claims

20     Volvo argues that Trew's claims for concealing the defect in

21  the ETM under: (1) the UCL; (2) the CLRA; (3) fraudulent

22  concealment-nondisclosure; and (4) unjust enrichment should be

23  dismissed because she has not suffered an injury.  (Mot. to

24  Dismiss at 12.)

25     Trew argues that she has suffered an injury for two reasons:

26  (1) even though the ETM in her vehicle has not failed, it will;

1   and (2) she would have paid less for her vehicle if she had known

2   about the defective ETM.  (Opp'n to Mot. to Dismiss at 6.)

3       To support her argument that she has suffered an injury

4   because her ETM will fail, Trew cites Chamberlan v. Ford Motor

5   Co., 369 F.Supp.2d 1138 (N.D. Cal. 2005).  (Opp'n to Mot. to

6   Dismiss at 6.)  In Chamberlan, the plaintiffs brought a class

7   action against Ford Motor Company alleging violations of the UCL

8   and CLRA.  369 F.Supp.2d at 1141.  The plaintiffs claimed that

9   Ford failed to disclose problems with the intake manifolds on a

10  number of vehicles.  Id. at 1142-43.  Ford moved for summary

11  adjudication on the CLRA claims by those class members whose

12  manifolds had not failed.  Id. at 1146.  Ford argued that those

13  plaintiffs had not established any damages under the CLRA.  Id.

14  Based on testimony offered by the plaintiffs that all, or nearly

15  all, of the class members' manifolds would fail, the court found

16  that the plaintiffs had raised sufficient evidence of an injury

17  to deny the motion.  Id. at 1148.

18      Similar to the plaintiffs in Chamberlan, Trew argues that

19  the defective part in her vehicle will almost certainly fail.

20  (Opp'n to Mot. to Dismiss at 8.)  Volvo responds that Trew's

21  claim that the ETM in her vehicle will fail is speculative.

22  (Reply in Support of Mot. to Dismiss at 6.)  However, to avoid

23  dismissal, Trew need only allege facts necessary to state a

24  cognizable claim.  See Fed. R. Civ. P. 8(a).  Because plaintiffs

25  contend that every ETM is defective and will fail, Trew has met

26  this standard.  (FAC ¶ 22.)

Second, Trew argues that she would not have paid as much for her vehicle if she had known of the ETM defect. (FAC ¶¶ 83, 98-99.)  Volvo responds that, because Trew leased her vehicle, she cannot claim a loss in value, but fails to address her argument that she would not have paid as much initially. (Reply in Support of Mot. to Dismiss at 7.)  Therefore, Trew has alleged sufficient facts to establish a second injury.

Because Trew has alleged two possible injuries, the court DENIES Volvo's motion to dismiss Trew's claims for concealing the defect in the ETM under: (1) the UCL; (2) the CLRA; (3) fraudulent concealment-nondisclosure; and (4) unjust enrichment.

## ii. Secret Warranty Law

Volvo argues that Trew has not suffered an injury because she has not lost money or property as a result of the alleged violations of the Secret Warranty Law.  (Mot. to Dismiss at 6.)

Plaintiffs appear to claim that Volvo violated the secret warranty law by: (1) failing to notify all affected vehicle owners that they could have their ETMs cleaned for no charge (FAC ¶ 41); (2) failing to reimburse vehicle owners who paid to have their ETMs cleaned (Id. ¶ 66); (3) replacing faulty ETMs for some customers with expired warranties (Id. ¶ 37); (4) failing to provide free cleaning or replacement of faulty ETMs for customers who requested those services (Id. ¶ 44); (5) cleaning ETMs for customers with expired warranties (Id. ¶ 39); (6) failing to comply with the dealer notification provisions (Id. ¶ 42); and (7) failing to comply with the New Motor Vehicle Board

1   notification procedures (<u>Id.</u> ¶ 43).

2       Neither party has addressed Trew's standing to raise these

3   separate claims for violations of the Secret Warranty Law.

4   Without such briefing, the court is not in a good position to

5   determine if Trew's UCL and unjust enrichment causes of action

6   for violations of the Secret Warranty Law should be dismissed for

7   lack of standing.  When the facts in this case are more

8   developed, and plaintiffs have refined the claims that Trew

9   raises, the defendant may renew a challenge to Trew's Secret

10  Warranty claims on the basis of a lack of standing.  Therefore,

11  the court DENIES Volvo's motion to dismiss Trew's UCL and unjust

12  enrichment causes of action for violations of the Secret Warranty

13  Law.

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

III.

For the reasons stated above, the court: (1) DENIES Volvo's motion to strike plaintiffs' claim for disgorgement of profits under the UCL; (2) GRANTS Volvo's motion to strike plaintiffs' claim for reimbursement of class members who paid for cleaning or replacement of their ETMs; (3) DENIES Volvo's motion to dismiss Trew's claims under the UCL and CLRA, and for fraudulent concealment-nondisclosure and unjust enrichment arising from Volvo's alleged concealment of the defective ETMs; and (4) DENIES Volvo's motion to dismiss Trew's UCL and unjust enrichment causes of action for violations of the Secret Warranty Law.

IT IS SO ORDERED.

Dated: 2/7/2006

DAVID F. LEVI
United States District Judge