IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CAROLE TREW, on behalf of
herself and all others
similarly situated, and on
behalf of the General Public as
a Private Attorney General,
LOREN FUNK, MATTHEW WESLEY
MARX, JUDITH MARX, and SCOTT
SANTOS, on behalf of themselves
and others similarly situated,

     Plaintiffs,

  v.

VOLVO CARS OF NORTH AMERICA,
LLC, and DOES 1 through 100,
inclusive,

     Defendants.      /

No. Civ. S-05-1379 RRB EFB

Memorandum of Opinion
and Order

On March 7, 2007, the court granted preliminary approval for a settlement class in this action. Following defendants' delivery of direct mail notice to class members, the parties seek final approval of the settlement agreement, which includes a stipulated fee award. For the reasons below, the court GRANTS final approval.

1

I.

In the 1990s, Volvo developed a new throttle system for controlling airflow to a car's fuel system and the output of power from the engine.   While older systems used mechanical feedback to open and close valves, Volvo's new system was controlled electronically.   In the first three years following the electronic throttle modules' (ETMs) 1999 introduction, however, Volvo allegedly began having trouble with carbon deposits, causing rough idling, increased emissions, loss of power, and stalls.   In 2002, the design was changed.   Many owning cars containing the ETMs were forced to bring their cars in for cleaning of the modules or complete replacement of the system.   Plaintiffs allege that Volvo internally identified the ETM as defective and decided to allow owners and lessees one free cleaning if they reported problems, but did not initiate a full recall.   The cleaning allegedly extended the life of the module, often beyond the warranty period, but did not address the underlying defect.   Also, in some cases, Volvo allegedly misinformed customers that certain cleanings and replacements were not covered under warranty.   Based upon Vovlo's alleged actions regarding faulty ETMs in cars manufactured between 1999 and 2002, plaintiffs sought recovery under: (1) California's "secret warranty" law, Cal. Bus. & Prof. Code § 17200; (2) unjust enrichment; (3) common law fraud; (4) the Consumer Legal

Remedies Act, Cal. Civ. Code § 1750; and (5) the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.

In November 2005, Volvo reached an agreement with the California Air Resource Board (CARB), which had initiated its own investigation of the ETMs given consumer complaints of high failure rates. The CARB agreement required Volvo to: (1) make available a free software upgrade to improve the performance of the ETMs; (2) extend the ETM warrant to ten years, 200,000 miles; and (3) reimburse current owners and lessees for prior ETM repairs and replacements.

In February 2006, Volvo began negotiating a settlement with plaintiffs. On April 18, 2006, the parties appeared before a private mediator. Following the meeting, the parties accepted a settlement under which Volvo agreed to: (1) reimburse current and former owners and lessees for costs incurred repairing and replacing the ETMs; (2) reimburse owners or lessees for up to $50 in already-accrued towing and rental car expenses related to ETM failure; (3) extend the ETM warrant to ten years, 200,000 miles; (4) establish a toll-free hotline for ETM questions and/or reporting or review of prior ETM problems; (5) pay for class notification; (6) provide class counsel with six-month updates for the first thirty months following settlement approval; (7) pay named plaintiffs incentive awards ranging from $1000 to $5000; and (8) pay class counsel $1,385,000 in fees.

At the initial approval hearing, the court found the settlement agreement to be fair.   The court ordered the parties to provide notice to class members and, following the notice period, to return to court for final approval of the agreement. Although the parties initially reported problems in obtaining addresses for class members, they claim to have resolved these issues.   Volvo sent 360,505 class members notification and received sixty-eight opt-out requests and five objections.[1]   The parties seek final approval of the agreement, including the attorneys' fee stipulation.

II.

A.   FAIRNESS HEARING

"At the fairness hearing, the proponents of the settlement must show that the proposed settlement is 'fair, reasonable, and adequate.'"   Manual for Complex Litigation § 21.634 (Fourth ed. 2004).   "Even if there are no or few objections or adverse appearances before or at the fairness hearing, the judge must ensure that there is sufficient record as to the basis and

_____

[1]   The parties dispute the validity of the final opt-out, Jane Brannan, due to the receipt of her request nearly two weeks after the deadline.   Brannan claims that her opt-out was late because notice was delayed due to a change in address.   The court GRANTS plaintiffs' request that Brannan be allowed to opt out.   Given the very small number of class members opting out and the closeness of Brannan's opt-out notice to the actual deadline, the court finds that allowing her opt-out will not impermissibly prejudice defendant.

justification for the settlement. Rule 23 and good practice both require specific findings as to how the settlement meets or fails to meet the statutory requirements." Id. at § 21.635. When seeking final approval, plaintiffs may establish a presumption of fairness by demonstrating: "(1) [t]hat the settlement has been arrived at arm's-length bargaining; (2) [t]hat sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently; (3) [t]hat the proponents of the settlement are counsel experienced in similar litigation; and (4) [t]hat the number of objectors or interests they represent is not large when compared to the class as a whole." Alba Conte and Herbert B. Newberg, Newberg on Class Actions § 11:41 (2006).

The court finds that the parties have satisfied the certification requirements for a nationwide settlement class. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997). The court finds that the class of hundreds of thousands of Volvo owners and lessees makes joinder impracticable, there are common questions of law and fact regarding the ETMs, the representative parties have claims typical of those shared by the class, and the representative parties will fairly and adequately protect the class interests. Moreover, it finds that the common questions of law and fact regarding the ETMs predominate over any questions affecting only individual class members.

The court finds that the parties have established a presumption of fairness. First, the parties engaged in arm's-length negotiations. The parties came to this agreement during a professional mediation session, there have been no allegations of collusion, and the results obtained by plaintiffs largely remedy the injuries suffered. Second, the parties conducted extensive discovery, which included "production of documents, depositions, vehicle inspections and [other] substantive and discovery-related motion practice." Third, counsel for plaintiffs and Volvo are experienced in litigating and settling complex class actions. Fourth, the few objections filed lack merit, as explained below.

The parties provided notice in accordance with the plan outlined in the Joint Motion for Preliminary Approval of Settlement. Despite initial difficulties securing some current addresses, the parties have demonstrated that notice has been given in an adequate and sufficient manner. The court finds that the notice provided is the best practicable under the circumstances and satisfies the requirements of due process. The parties provided a full opportunity for members of the class to opt-out, object, or participate in the final approval hearing.

The parties have reported five objectors to the settlement. Two objectors, Tawil and Mulder, opted out of the agreement,

eliminating their standing to challenge it.   Even if considered, their objections are baseless.   Tawil misreads the settlement to waive Volvo's liability for personal injury.   In actuality, the settlement expressly retains class members' rights to bring such suits.   Tawil also questions whether the settlement provides any benefit over the CARB settlement.   As discussed in relation to attorneys' fees, the action served as a catalyst to the CARB settlement.   Moreover, there are five additional benefits provided by the class settlement over the CARB settlement: (1) reimbursements for cleaning and replacement expenses for all current and former owners and lessees, as opposed to only current ones; (2) up to $50 in incidental expense reimbursement; (3) an appeals system for the review of previously denied warranty and reimbursement claims; (4) a notification system, in the form of a car manual sticker, to alert future owners; and (5) a lower standard of proof to demonstrate prior expenses, allowing credit card statements or cancelled checks as opposed to only receipts.

The claims of the remaining three objectors similarly lack merit.   Objector Kedas argues that the settlement does not reimburse her for a new car, which she claims she was forced to purchase after ETM problems with her Volvo.   The court finds that the settlement provides a reasonable remedy to class members and that the opt-out process provided Kedas an adequate

means of seeking greater compensation.  Objector Weymouth argues that the attorneys' fees are "unconscionable," a claim answered below in the fee discussion.  Objector Arnel seeks reimbursement for "incorrect diagnostics and unnecessary repairs," two types of claims that the settlement addresses through its review and appeal system.  Therefore, the objectors' arguments lack merit.

Finally, at the preliminary approval hearing, the court questioned whether providing up to $50 reimbursement for incidental expenses only for those class members incurring expenses prior to notification of the settlement was a fair outcome.  The parties responded that the decision to provide incidental reimbursement only to pre-settlement costs was a negotiated point during the settlement and permissibly treats different groups differently.  The pre-settlement incidental expenses are covered because class members may have had little to no notification of the ETM problems, making it difficult to protect against expenses such as towing.  Following settlement notification, however, class members are on notice as to the signs and risks of ETM failure and the preventative steps that can be taken at no cost to them.  Based upon this added knowledge, the parties feel that it is fair to exclude those who may incur future incidental expenses from the group eligible for up to $50 in reimbursement.  The court finds this outcome to be fair, particularly given that the potential $50 recovery is a

minor component of a much larger settlement package otherwise extending equal rights to all class members.

For the reasons above, the court ratifies its preliminary determination that the settlement is fair and reasonable.

B.   ATTORNEYS' FEES

When a settlement class action creates a fund to benefit class members, the court may award fees based upon either a percentage of the fund or the lodestar method.   <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1047 (9th Cir. 2002).   Courts typically set a percentage of the fee as a reasonable fund.   <u>Id.</u> Class counsel argue that either method supports their requested, and unopposed, fee award of $1,385,000.

Plaintiffs claim a right to fees as a catalyst to the CARB agreement and based upon new benefits obtained under the class settlement.[2]   Under the "catalyst" theory, the court may award fees even when the litigation does not result in a judicial resolution if "the defendant changes its behavior substantially because of, and in the manner sought by, the litigation."

---

[2]   The class settlement provides additional benefits beyond the CARB settlement: (1) reimbursements for cleaning and replacement expenses for all current and former owners and lessees, as opposed to only current ones; (2) up to $50 in incidental expense reimbursement; (3) an appeals system for the review of previously denied warranty and reimbursement claims; (4) a notification system, in the form of a car manual sticker, to alert future owners; and (5) a lower standard of proof to demonstrate prior expenses, allowing credit card statements or cancelled checks as opposed to only receipts.

_Graham v. DaimlerCrysler Corp._, 34 Cal.4th 553, 565 (2004).   A plaintiff must demonstrate "that (1) the lawsuit was a catalyst in motivating the defendants to provide the primary relief sought; (2) that the lawsuit had merit and achieved its catalytic effect by threat of victory, not dint of nuisance; and (3) that the plaintiffs reasonably attempted to settle the litigation prior to filing the lawsuit."   _Topton-Whittingham v. City of Los Angeles_, 34 Cal.4th 604, 608 (2004).   The chronology of the CARB and class settlement agreements demonstrates that the class action satisfies the "catalyst" requirements.

Plaintiff Trew filed the initial complaint on May 17, 2004. On July 8, Volvo employees discussed the lawsuit and a pending CARB investigation during a meeting regarding the high ETM failure rates.[3]   The day of the meeting, Volvo's outside counsel requested that plaintiffs provide a settlement demand, which they supplied immediately.   On August 5, Volvo's new outside counsel filed a motion to dismiss the complaint without responding to the prior settlement offer.   Following the court's denial of the motion to dismiss, class counsel deposed two Volvo employees who informed them of the scope of the ETM failures and the CARB investigation.

_____

[3]   Class counsel was unaware of the CARB investigation at the time of the filing and only learned of the July 8 meeting upon obtaining a document during discovery describing it.

On November 18, 2004, CARB requested that Volvo extend the warranty on California vehicles to ten years, 200,000 miles. On March 25, 2005, class counsel provided copies of internal Volvo documents to CARB, which incorporated them into their official investigation file. On May 5, class counsel provided Volvo with notice pursuant to the Consumer Legal Remedies Act (CLRA), informing it that unless a settlement could be reached, plaintiffs intended to amend the complaint to assert broader claims alleging that Volvo knowingly manufactured and marketed cars with defective ETMs and deceived customers regarding the efficacy of Volvo's remedial efforts in cleaning the modules. On May 26, one day after the court denied Volvo's motion to recover documents provided by class counsel to CARB and the media, Volvo offered to resolve the CARB investigation by extending the ETM warranty to ten years, 100,000 miles not only in California, but for all of the United States and Canada. CARB did not request, and Volvo did not offer, to reimburse owners or lessees for the cost of prior ETM cleanings or replacements. On June 3, Volvo responded to plaintiffs' CLRA letter by stating that the claims were "meritless" and informed plaintiffs for the first time of its ten-year, 100,000-mile warranty offer to CARB.

On June 16, 2005 CARB again requested that Volvo extend its warranty offer to ten years, 200,000 miles. On July 14, Volvo

rejected CARB's extended warranty proposal.   On September 25,

class counsel sent a second CLRA notice letter to Volvo,

informing it that plaintiffs would amend the complaint to

advance nationwide claims if Volvo did not agree to extend the

warranty to ten years, 200,000 miles and reimburse owners or

lessees for the cost of ETM cleanings and replacements.   Volvo

rejected plaintiffs' offer on October 21.   On October 28,

however, Volvo dropped its opposition to CARB's settlement offer

and agreed to the ten-year, 200,000-mile warranty and

reimbursement of costs for all current owners and lessees in the

United States and Canada.   Following Volvo's settlement with

CARB, the plaintiffs and Volvo spent over a year negotiating a

settlement and deciding upon the language of the class notice

form.   On February 7, 2007, the parties in this action filed a

joint notice of a preliminary settlement agreement and stated

that they were prepared to provide class notice.

     Given the above facts establishing the action as a catalyst

to the CARB agreement, and the additional benefits provided by

the class agreement, the court finds that class counsel are

eligible for reasonable attorneys' fees.

     The $1,385,000 fee amount stipulated in the settlement is

reasonable.   The Ninth Circuit assumes a benchmark fee rate of

25% in common fund cases.   Vizcaino, 290 F.3d at 1048.

Plaintiffs estimate that the common fund, based upon 24,000 ETM

replacements conducted between January 2003 and April 2004 at roughly $1000 a module, is worth at least $24 million. This figure does not include the potential costs of compensating owners or lessees for ETM cleanings prior to replacement or incidental expenses up to $50 per customer. The fee of $1,385,000 is roughly 5% of the potential common fund secured by the action, well below the 25% benchmark. Given the significant relief already provided by the CARB settlement, the reduced rate is appropriate. The lodestar cross-check, id. at 1050, further supports the reasonableness of the stipulated fees. Class counsel allege that they billed over 3,621.4 hours of work over four years on the case, amounting to an estimate fee of $1,573,095. Therefore, the court finds the stipulated fees to be fair and reasonable.

The settlement agreement also provides for incentive awards for the class representatives. The court finds that the representatives made significant contributions to the prosecution and resolution of this action. It also finds the awards to be proportional to the comparative contributions made by the representatives. Therefore, it approves the following awards: Carole Trew, $5,000; Loren Funk, $2,500; Matthew Wesley Marx and Judith Marx, $2,500; and Scott Santos, $1,000.

III.

For these reasons, the court GRANTS final approval for the settlement agreement.    The court ORDERS that the terms of the settlement agreement be incorporated into the court's final judgment and, without affecting the finality of judgment, that the court retain jurisdiction over this action, including the administration and consummation of the settlement.

IT IS SO ORDERED.

ENTERED this 30th day of July, 2007.

s/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE
